IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ALVIN GAMAR STANLEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | NO. 5:22-CV-00239-TES-CHW |
| | : | |
| WARDEN WHITENTIN, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER AND RECOMMENDATION

Presently pending before the Court is the Recast Complaint of *pro se* Plaintiff Alvin Gamar Stanley, an inmate currently housed in the Riverbend Correctional Facility in Milledgeville, Georgia, filed pursuant to 42 U.S.C. § 1983 (ECF No. 7). A recommendation entered on October 21, 2022, recommended that Plaintiff's claims be dismissed without prejudice because Plaintiff had failed to comply with the Court's order to pay an initial partial filing fee or to file a renewed motion for leave to proceed *in forma pauperis* explaining his current inability to pay (ECF No. 18). In response, Plaintiff filed objections explaining that he had experienced delays with the mailroom and that prison officials had failed to deduct the initial partial filing fee from his account, despite funds being available. Objs. 1-2, Nov. 30, 2022, ECF No. 26. The Court thus **VACATES** its October 21, 2022 recommendation of dismissal (ECF No. 18) and waives the requirement that Plaintiff pay an initial partial filing fee before further processing of this case. Plaintiff's motion to have the Court order Defendants to send the Court the required initial

partial filing fee (ECF No. 27) is **DENIED as moot.**

Plaintiff's claims are now ripe for preliminary screening pursuant to 28 U.S.C. § 1915 and § 1915A. For the following reasons, Plaintiff's motion to amend (ECF No. 25) is **GRANTED** in part and **DENIED** in part. Plaintiff's Eighth Amendment claims that Defendants Whitentin, Ashley, Barnett, Spin, Jones, Ward, Lott, and King were deliberately indifferent to his safety shall proceed for further factual development. It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice.**

## MOTION TO AMEND

Plaintiff has filed a motion to amend his Complaint (ECF No. 25). First, Plaintiff requests that the Court "delete and remove all declarations that have the familys [sic] and friends of Plaintiff's personal information" because "Plaintiff has Defendants in this case that want to see him dead and will use gang members to harm him or his family and friends." Mot. Am. 1, ECF No. 25. This Court's local rules permit the filing party to redact certain information from any filing containing "an individual's social security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, or the home address of an individual[.]" M.D. Ga. R. 5.4(A). In addition, the Court may issue a protective order that redacts "additional information" if "good cause" is shown. M.D. Ga. R. 5.4(D). In this case, Plaintiff has not moved for a protective order, and it is unclear what kinds of "personal information" Plaintiff seeks to redact from the record. If Plaintiff requires the redaction of personal

2

information from the record in this case, he must file a motion that clearly identifies what information needs to be redacted and explains why there is "good cause" for redaction. Any allegations of "good cause" should also be supported by specific facts demonstrating why redaction is necessary in this case. Plaintiff's motion to amend is therefore denied to the extent it would require the Court to delete unspecified "personal information" from Plaintiff's filings.

Plaintiff also asks the Court "to delete and remove both preliminary injunctions and temporary restraining orders" because Plaintiff has spoken to prison officials who have reassured him "that he will not be sent to a facility where he would be killed during intake procedure or while being housed at that facility." Mot. Am. 1, ECF No. 25. Plaintiff's motion to amend to strike his claims for preliminary injunctive relief and the claims against Defendant McRae is granted.

## PRELIMINARY SCREENING

### I.     Factual Allegations

Plaintiff's claims arise from his previous incarceration at the Wilcox State Prison ("WSP") from October 4, 2021, until July 19, 2022. Recast Compl. 5, ECF No. 7. According to the Recast Complaint, as later amended by Plaintiff as described above, Plaintiff was "falsely accused" of stealing a cellphone from another inmate who is a member of the Goodfellas gang. Attach. 3 to Recast Compl. 1, ECF No. 7-3.[1] As a

---

[1] The Recast Complaint is now the operative pleading in this action. *See Schreane v. Middlebrooks*, 522 F. App'x 845, 847 (11th Cir. 2013) (per curiam) (noting that generally,

result, that inmate "placed a bounty on the Plaintiff's body to be killed." *Id.* Because of this bounty, Plaintiff has a significant need for protective custody and has been housed in segregation for the past seven years. *Id.* When Plaintiff arrived at WSP on or about October 4, 2021, he immediately advised prison officials verbally and in writing that he feared for his life and required protective custody. *Id.* Plaintiff was therefore assigned to a "secure cell" in the segregation unit at WSP. *Id.*

Despite his assignment to an ostensibly secure cell, Plaintiff soon noticed many breaches in security in the segregation unit at WSP. First, the segregation unit was left completely unsupervised on holidays, weekends, and evenings due to "an extreme shortage of staff" at the prison. *Id.* In fact, the only time Plaintiff regularly saw prison guards was on Mondays, Wednesdays, and Fridays during shower call. *Id.* Even during shower call, guards often did not properly secure prisoners, which allowed prisoners to exit the showers at will. *Id.* Because orderlies sometimes refused to work their shifts, "random" and "unauthorized" inmates served the segregation inmates their meal trays. *Id.* The gates between the segregation unit and the general population unit were often left unlocked, allowing general population inmates to "bum rush" the segregation unit and gain access to its inmates. *Id.* at 1-2. The control center was often unsupervised, and it contained

---

an amended complaint supersedes the original complaint unless the amended complaint specifically refers to or adopts the original complaint). The only Defendants listed in the Recast Complaint are Whitentin, Ashley, Jones, Barnett, Spin, Lott, Ward, and King. Recast Compl. 4, ECF No. 7. The Clerk is therefore directed to terminate this action as to Defendants Johnson and Prather and to correct the caption accordingly.

"combative equipment" and buttons that would unlock all the cells. *Id.* at 1. Plaintiff contends that prison officials knew that many of the cell doors malfunctioned, permitting inmates to exit their cells at will. *Id.* at 2. In addition, Plaintiff alleges that many inmates possessed homemade weapons and tools they would use to gain entry to other inmates' cells. *Id.* at 3.

Plaintiff contends that he was assaulted numerous times at WSP because of these breaches in security. On at least two occasions, inmates from general population gained access to the segregation unit and threw feces on Plaintiff. Attach. 3 to Recast Compl. 2, ECF No. 7-3. Plaintiff was attacked several times when inmates were allowed to "roam freely" during shower call: on May 25, 2022, Plaintiff was struck in the head with a broomstick; on June 3, 2022, Plaintiff was stabbed with a plexiglass shank; and on June 6, 2022 another inmate cut him with a "large knife." *Id.* at 2-3. There were also several unsuccessful attempts to harm Plaintiff. On February 5, 2021, a group of four inmates used homemade weapons and tools to disable Plaintiff's cell door lock and pull Plaintiff out of his cell. *Id.* at 2. Plaintiff contends there was "no officer in sight" at this time. *Id.* Another inmate attempted to "spike" Plaintiff's food with sleeping medication on November 28, 2021, and someone successfully "spiked" Plaintiff's tray on March 26, 2022. *Id.* at 1-2. At least one other inmate on protective custody was also stabbed on June 3, 2022. *Id.* at 3.

Plaintiff alleges that he complained to prison officials both verbally and in writing about these issues, but to no avail. He therefore contends Defendants' action and inaction

violated his constitutional rights, and as a result he seeks compensatory damages, punitive damages, a jury trial, costs, and "any additional relief the court[] deems just proper and equitable." Recast Compl. 6, ECF No. 7.

## II.     Plaintiff's Claims

### A. Deliberate Indifference to Safety

Plaintiff's Recast Complaint primarily gives rise to claims that prison officials were deliberately indifferent to his safety at WSP. This type of claim is generally cognizable under the Eighth Amendment to the United States Constitution. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prisoner asserting an Eighth Amendment failure-to-protect claim must allege (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013). To establish deliberate indifference in this context, a prisoner must show that prison officials subjectively knew of the substantial risk of serious harm and that the prison officials knowingly or recklessly disregarded that risk. *Id.* at 1332. The subjective component of deliberate indifference requires a prisoner to allege facts showing that a prison official had "'more than a generalized awareness of risk'" to the prisoner. *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101-02 (11th Cir. 2014)). The inmate can do this by pleading facts showing "that he was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm" or by providing prison officials with details about a specific threat sufficient "to enable them to

conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" *Id.* at 1235-36 (quoting *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)). The objective prong requires the prisoner to allege facts establishing that the prison official objectively "responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act." *Id.* (internal quotation marks omitted).

In this case, Plaintiff alleges that as soon as he arrived to WSP, he "immediately issued statement forms" to the Defendants in this case and advised them "verbally of why he needs to be protected." Attach. 3 to Recast Compl. 1, ECF No. 7-3. He further notes that he complained verbally and in writing to all Defendants and specifically reported various incidents where inmates harmed him (or attempted to harm him) to "all staff including wardens." *Id.* at 2; Recast Compl. 4, ECF No. 7. Plaintiff alleges that Defendants did nothing to protect him despite their personal knowledge of the danger Plaintiff faced.

Most of the individuals named as Defendants also appear to hold supervisory positions at the prison. Supervisors can be held liable for unconstitutional conduct under § 1983 if they personally participated in unconstitutional conduct or if there is a causal connection between their actions and the alleged constitutional violation. *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam). This causal connection can be established if there is "a history of widespread abuse" in the prison or if a "supervisor's improper custom or policy le[d] to deliberate indifference to constitutional

7

rights." *Id.* Plaintiff's allegations indicate that the alleged breaches of security at the prison were frequent enough that Defendants should have been on notice of them and that those breaches may have resulted from Defendants' customs or policies. For example, Plaintiff has alleged facts suggesting that Defendants regularly permitted inmates in the segregation unit to remain unsupervised for extended periods of time, allowed unauthorized inmates to enter the segregation unit, failed to follow protocols that would increase the safety in the segregation unit, and knew about various malfunctions that could allow inmates to exit their cells at will. Indeed, the lack of supervision was so extreme that Plaintiff alleges inmates were able to knock out their sinks, tunnel through the cell walls, escape into the "pipe chase," and attempt to eject Plaintiff from his cell. Attach. 3 to Recast Compl. 5, ECF No. 7-3.

In sum, Plaintiff's allegations at this early stage at least suggest that the named Defendants were deliberately indifferent to his safety. Plaintiff's Eighth Amendment claims against Defendants shall therefore proceed for further factual development.

### B. Deliberate Indifference to Serious Medical Needs

Plaintiff also appears to suggest that Defendants failed to provide him with adequate medical attention after he was assaulted. These allegations could give rise to claims that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). To show that a state actor was deliberately indifferent to his serious medical needs, "a plaintiff must satisfy both an objective and a subjective inquiry." *Id.* at 1243. A plaintiff must

first "set forth evidence of an objectively serious medical need*"* and then prove that the defendant "acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.* In other words, the defendant must both "know of and then disregard an excessive risk to the prisoner." *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam). For purposes of this analysis, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted). A serious medical need can also arise if "a delay in treating the need worsens the condition." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009). "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Farrow*, 320 F.3d at 1243). It is clear, however, that "delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187-88 (11th Cir. 1994), *overruled on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

Plaintiff alleges that he did not receive adequate medical care on three occasions. First, Plaintiff contends that Defendant Lott did not provide him with adequate medical care after Plaintiff was assaulted on May 25, 2022. Attach. 3 to Recast Compl. 4, ECF No. 7-3. On that date, another inmate struck Plaintiff with a broken broom handle that he had inserted into Plaintiff's tray flap, causing Plaintiff "to bleed from the mouth and hands." *Id.* at 2. Apart from this conclusory statement, however, Plaintiff provides no

detail about the nature or severity of his injury. It is therefore impossible to tell whether Plaintiff suffered from an objectively serious medical need or a simply a superficial, nonserious injury. *Cf. Aldridge v. Montgomery*, 753 F.2d 970, 971-72 (11th Cir. 1985) (per curiam) (holding that officers were deliberately indifferent to detainee's serious medical needs when they failed to provide him with treatment for one-and-a-half-inch cut that was actively bleeding, "form[ed] a pool of blood on the floor approximately the size of two hands," and ultimately required six stitches and painkillers).

Plaintiff also contends that Defendant Ward failed to provide him with adequate medical care on June 3, 2022, after another inmate stabbed Plaintiff in the forearm with a piece of plexiglass. Attach. 3 to Recast Compl. 4, ECF No. 7-3. Plaintiff again fails to provide any details about his injury, and the Court therefore cannot determine whether Plaintiff had a serious medical need that required treatment. Moreover, Plaintiff "denied going to medical" because several other inmates told Plaintiff that "if he left his cell they would exit there [sic] malfunctioned cell and kill him." *Id.* at 3. Defendant Ward therefore cannot be held responsible for Plaintiff's refusal to seek medical treatment, and Plaintiff's claims based on this incident should be dismissed. *See Hill*, 40 F.3d at 1189 (noting that "[t]he greatest delay in medical treatment . . . was attributable" to the fact that plaintiff did not complain about bleeding for several hours).

Finally, Plaintiff contends that Defendants Whitentin, Barnett, Spin, Jones, and Ashley failed to provide him with adequate medical care on June 6, 2022. Attach. 3 to Recast Compl. 5, ECF No. 7-3. On this date, Plaintiff contends he received a "small cut

on his right hand" when another inmate tried to stab Plaintiff through the tray flap, and he could not receive medical assistance because there were no officers present to escort him to medical. *Id.* at 4. Again, Plaintiff has failed to allege facts sufficient to show that his "small cut" constituted a serious medical need. As such, he has failed to state an actionable Eighth Amendment claim.

### III. Conclusion

For the foregoing reasons, the October 21, 2022 recommendation of dismissal (ECF No. 18) is **VACATED**, and Plaintiff's motion to have the Court order Defendants to send the Court the required initial partial filing fee (ECF No. 27) is **DENIED as moot.** Plaintiff's motion to amend (ECF No. 25) is **GRANTED in part and DENIED in part**, and his Eighth Amendment claims that Defendants Whitentin, Ashley, Barnett, Spin, Jones, Ward, Lott, and King were deliberately indifferent to his safety shall proceed for further factual development. It is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED without prejudice.**

### OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the Honorable Tilman E. Self, III, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written

objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Whitentin, Ashley, Barnett, Spin, Jones, Ward, Lott, and King, it is accordingly **ORDERED** that service be made on those Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines

that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with

his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.  This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.   No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.   The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:   except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.   No party shall be required to respond to any such

14

requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 29th day of December, 2022.

s/ Charles H. Weigle<br>
Charles H. Weigle<br>
United States Magistrate Judge